UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVANSTON INSURANCE COMPANY,

    Plaintiff,

v.

                                Case No. 2:18-cv-103-FtM-99MRM

ETCETERA, ETC INC., KLAS
ETCETERA, LLC and GOLF ETCETERA,
INC.,

    Defendants.
_____/

**OPINION AND ORDER**

This matter comes before the Court on defendants' Motion to Compel Appraisal and Stay Proceedings (Doc. #24) filed on May 15, 2018. Plaintiff filed a Response in Opposition (Doc. #27) on June 5, 2018, and defendants filed a Reply (Doc. #30) on June 19, 2018. For the reasons set forth below, the Motion is granted.

**I.**

On September 10, 2017, Hurricane Irma made landfall on Southwest Florida. This declaratory judgment action involves an insurance dispute regarding the amount of damage to commercial property located at 175 Kings Highway, Port Charlotte, Florida (the "Property") that is attributable to Hurricane Irma. (Doc. #1.)

Evanston provided general liability and property insurance

coverage on the Property to defendants (the "Insureds") with an $800,000 policy limit. (Doc. #1, ¶ 10; Doc. #1-1, the "Policy.") Following submission of a claim by the Insureds, Evanston investigated the loss. (Id., ¶ 13.) During the time when Evanston was investigating, Charlotte County issued a "Notice of Unsafe Building" with respect to the Property dated November 9, 2017, noting that the building on the Property "was in danger of collapse." (Doc. #1-2.) The Notice states that the Property was inspected by the County on October 25, 2017. The Notice informed defendants they had two options – repair or demolish the building:

> If you decide to repair the building, you must, within 30 days of your receipt of this notice, secure all necessary permits and commence the work. All work must fully comply with the provisions of the applicable building codes.
>
> If you decide to demolish the building, you must, within 30 days of your receipt of this notice, secure all necessary permits and complete the demolition, including debris removal.

(Id.) The Notice further stated that if the foregoing actions were not commenced or completed within 30 days, the County would demolish the building. (Id.) Defendants had the right to appeal the County's Notice or seek modification, but it does not appear that they did so. (Id.) Despite the absence of any law or ordinance that would have prevented defendants from repairing the building, defendants decided to demolish the building. The record is unclear what the motivations were for their decision to demolish

the building rather than repair it.

Evanston disagreed with the County's assessment and the Insured's decision to demolish the building. After receiving a copy of the County's Notice, Evanston issued a letter to the Insureds on December 5, 2017 (just shy of the Insured's 30-day deadline from the County), dated November 28, 2017. (Doc. #1, ¶ 16; Doc. #1-3.) Evanston's letter stated that it "serve[d] as a follow up after learning that Etcetera, Etc. Inc. and Klas Etcetera, LLC intend to undertake the demolition of the insured property." (Id.) Evanston took the position that the County's Notice makes clear that the Property could be repaired. (Id.) Evanston had employed its own engineer, who found that the building could be repaired and there was no reason to demolish the building, and thus "any decision by you to demolish the building would be a voluntary decision and not related to the covered loss." (Id.)

Through counsel, in a letter dated January 2, 2018, the Insureds responded that although there was some pre-existing damage to the Property, Hurricane Irma caused additional damage, rendering it a "total loss." (Doc. #1-5.) The letter ended by stating:

> **Furthermore, please be advised that the local municipality has ordered the demolition of the subject property. We believe that the property will be torn down within the next few weeks, possibility sooner. Therefore, should Evanston Insurance Company wish to re-inspect the loss, we urge that it do so immediately.**

(Id., p. 2) (emphasis in original).

Evanston responded to the letter, stating that it would "re-open the claim" and would coordinate a re-inspection of the Property on January 15, or 16, 2018. (Doc. #24-4.) Evanston stated that it would require the re-inspection before considering any advance payment of the claim. (Id.) It is not clear whether the re-inspection took place.

Despite Evanston's letter stating that a re-inspection of the Property would take place on January 15 or 16, 2018, Evanston issued a letter to the Insureds on January 11, 2018, which was dated December 29, 2017, advising them that Evanston had completed its investigation, reiterating its belief that the building could be repaired, and although there was some covered loss, the damage estimate ($9,334.67) was below the applicable deductible for windstorm or hail ($24,000). (Doc. #1, ¶ 17; Doc. #1-4.) Evanston told its Insureds to submit documentation reflecting the cost of repair of damages caused by Hurricane Irma if it disagreed with Evanston's conclusion that the claimed damage does not exceed the Policy's applicable deductible. (Doc. #1-4.)

The Insureds state that they did not respond to Evanston's letter because they believed that Evanston was still attempting to negotiate and resolve the claim; that is until Evanston filed the instant suit on February 14, 2018. (Doc. #24 p. 1). Coincidentally, the demolition of the building was completed on

the same day the Complaint was filed. Defendants filed an Answer on March 12, 2018 and sent Evanston a demand for "appraisal of the loss" under the terms of Policy the same day. (Doc. #9; Doc. #24-1.) Evanston never responded to the demand for appraisal.

## II.

In its Complaint for Declaratory Judgment, Evanston disputes that the Property is a total loss and believes that its liability for the Insureds' claim is limited to any coverage caused by Hurricane Irma, subject to the Policy deductible and other terms and conditions. (Doc. #1, ¶ 20.) Evanston also alleges that to the extent the loss was caused by the enforcement of an ordinance or law regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the cost of removing its debris, it is excluded under the Policy. (Id., ¶ 23-24.) In sum, Evanston seeks a declaration that:

1. The Insured Property is not a total loss;

2. Florida's Valued Policy Law does not apply to the Policy[1];

3. Loss or damage caused by the enforcement of an ordinance or law (1) regulating the construction, use, or repair of any property; or (2) requiring the tearing down of any property, including the cost of removing its debris, is excluded; and

---

[1] The purpose of Florida's Value Policy Law "is to fix the measure of damages payable to the insured in case of total loss," and the statute's plain language "requires an insurer to pay that amount listed on the face of the policy in the event of a total loss without the necessity of any additional proof of the actual value of the loss incurred." Ceballo v. Citizens Prop. Ins. Corp., 967 So. 2d 811, 813-14 (Fla. 2007); Fla. Stat. § 627.702.

4. Its liability for the loss is limited to any covered damage caused by Hurricane Irma, subject to the Policy deductible and other terms and conditions.

(Id., ¶ 37.)

The Insureds request that the Court compel appraisal of the Property pursuant to the Policy's appraisal clause, which states:

**E. Loss Conditions**

. . .

   **2. Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will

   a. Pay its chosen appraiser;

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

(Doc. #1-1, p. 68). Evanston responds that defendants waived their right to appraisal by demolishing the building prior to demanding appraisal and should be estopped from asserting same.

**III.**

**A. Appraisal Right**

Under Florida law[2], a dispute regarding a policy's coverage for a loss is exclusively a judicial question. Gonzalez v. Am. Sec. Ins. Co., No: 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted). However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal. Id. (citations omitted); Freeman v. American Integrity Ins. Co. of Florida, 180 So. 3d 1203, 1208 (Fla. 1st DCA 2015). "Notably, in evaluating the amount of loss, an appraiser is necessarily tasked with determining both the *extent* of covered damage and the *amount* to be paid for repairs." Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc., 162 So. 3d 140, 143 (Fla. 2d DCA 2014) (emphasis in original). Thus, the question of what repairs are needed to restore a property is a question relating to the amount of loss and not coverage.

Evanston has stated that damages caused by Hurricane Irma are covered, but disputes the amount of damage, and has asserted that it falls below the deductible set forth in the insurance policy. On the other hand, the Insureds believe that the damage incurred is a "total loss." (Doc. #19 ¶¶ 88, 89; Doc. #1 ¶ 20.) Thus,

---

[2] In this diversity case, the Court applies Florida substantive law.

because there is no dispute between the parties that the cause of at least some of the damage to the Property is covered under the Policy, the remaining dispute concerning the scope of the damage is not exclusively a judicial decision and may be appropriate for appraisal.

**B. Waiver**

Evanston nonetheless contends that defendants have waived their right to an appraisal when they unilaterally chose to demolish the building prior to invoking appraisal, making appraisal impossible, and defendants should therefore be estopped from asserting a right to appraisal.[3] (Doc. #27 p. 4.)

"A waiver of the right to seek appraisal occurs when the party seeking appraisal actively participates in a lawsuit or engages in conduct inconsistent with the right to appraisal." Fla. Ins. Guar. Ass'n v. Rodriguez, 153 So. 3d 301, 303 (Fla. 5th DCA 2014) (citing Fla. Ins. Guar. Ass'n v. Branco, 148 So. 3d 488, 493 (Fla. 5th DCA 2014)). "[T]he primary focus is whether [the insureds] acted inconsistently with their appraisal rights." Id.

The Court agrees with the parties that there is little case law in Florida on the precise issue of whether the right to appraisal is waived by demolition of the property to be appraised,

---

[3] If appraisal is compelled, Evanston requests that the Court direct the appraisal panel to itemize the appraisal because coverage issues remain to be decided by the Court. (Doc. #27, pp. 9-10.)

but on the facts of this case the Court does not find waiver. Evanston had inspected the condition of the building just 30 days prior to Hurricane Irma (Doc. #24, p. 7) and the building was again inspected by the parties' adjusters and engineers following the hurricane. Evanston also had the opportunity to inspect the building prior to demolition. Although Evanston argues that defendants' conduct made appraisal impossible, Evanston has not convinced the Court it would be impossible to appraise the Property based on inspections and reports generated prior to demolition.

Appraisal is appropriate here given that Evanston has admitted that at least some of the loss is covered by the Policy but disputes the amount of its liability. "'[W]hen the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal.'" <u>Fla. Ins. Guar. Ass'n v. Lustre</u>, Case No. 2D13-5780, 2015 WL 1874445 (Fla. 2d DCA Apr. 24, 2015) (quoting <u>Cincinnati Insurance Co. v. Cannon Ranch Partners, Inc.</u>, 162 So. 3d 140 (Fla. 2d DCA 2014)). Accordingly, the appraisal requested by defendants is both mandated by the Policy and appropriate under the facts of the case. The case will be stayed while the appraisal is obtained.

**C. Scope of the Appraisal**

In the event the Court compels appraisal, Evanston requests that the Court direct the appraisal panel to prepare a detailed appraisal that states the cause of loss for each item found to be

damaged and the amount of that damage, as there are remaining coverage issues to be decided by the Court. Specifically, Evanston requests that the appraisal panel include line items for the following:

1. The Actual Cost Value of all damages at the subject property prior to the demolition of the damaged building on the subject property;

2. Damages resulting from the enforcement of an ordinance or law regulating the construction, use, or repair of any property, or requiring the tearing down of any property, including the cost of removing its debris;

3. The Actual Cost Value of covered damages to the building that existed prior to the demolition of the building and are directly attributable to Hurricane Irma; and

4. Damages that commenced prior to the inception of the Policy that was in effect on September 10, 2017, to include damages related to Hurricane Charley.

(Id., p. 10.) Although defendants filed a Reply (Doc. #30), they stated no position as to Evanston's request for a delineated appraisal.

A detailed line-item appraisal has been found to streamline the litigation process because an appraiser assigns a value for a particular type of damage, which allows the Court to more easily assess coverage disputes. Bonafonte v. Lexington Ins. Co., No. 08-cv-21062-CIV, 2008 WL 2705437, *2 (S.D. Fla. July 9, 2008). See also Florida Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc., 34 So. 3d 791, (Fla. 4th DCA 2010) (quoting Bonafonte) (approving the use of a line-item appraisal form, which allows the court to

"readily identify any coverage issues that arise during the course of the appraisal and resolve these without having to try and decipher what value the appraiser assign for a particular type of damage"). The Court agrees that such an approach could streamline coverage issues and seeing no objection from defendants, the Court approves the use of a line-item appraisal as set forth in Evanston's Response (Doc. #27).

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Compel Appraisal and Stay Proceedings is **GRANTED.** The parties shall cooperate in expeditiously obtaining an appraisal in the manner proscribed by the appraisal clause of the subject insurance policy, and this case is **STAYED** pending further notification by the parties that the stay is due to be lifted.

2. The parties shall file a status report on or before **October 22, 2018** if the appraisal is not complete or a notification has not been filed by this date.

3. Plaintiff's request for a line-item appraisal as set forth in its Response (Doc. #27) is **granted.**

4. The Clerk shall terminate all deadlines, administratively close this case, and add a stay flag to the docket.

**DONE** and **ORDERED** at Fort Myers, Florida, this __23rd__ day of July, 2018.

                                                            _____
                                                            JOHN E. STEELE
                                                            SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record