UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVANSTON INSURANCE COMPANY,

    Plaintiff/Counterclaimant Defendant,

v.                      Case No: 2:18-cv-103-FtM-29MRM

ETCETERA, ETC INC., KLAS ETCETERA, LLC, and GOLF ETCETERA, INC.,

    Defendants/Counterclaim Plaintiff.

## OPINION AND ORDER

This matter comes before the Court on plaintiff-counterclaim defendant Evanston Insurance Company's ("Evanston") Motion for Summary Judgment (Doc. #52), filed on August 29, 2019. Evanston seeks summary judgment on the breach of contract counterclaim (Doc. #9, pp. 9-11) filed by Defendants-counterclaim plaintiffs Etcetera, Etc Inc., Klas Etcetera, LLC, and Golf Etcetera, Inc. (collectively "Etcetera"). Etcetera filed a Response in Opposition (Doc. #54) on September 12, 2019, to which Evanston filed a Reply (Doc. #57) on October 22, 2019, with the permission of the Court. (Doc. #56.)

This is an insurance dispute arising from property damage to commercial property caused by Hurricane Irma. Evanston filed a

declaratory judgment action (Doc. #1) seeking certain declarations, including that under the insurance policy "its liability for the loss is limited to any covered damages caused by Hurricane Irma." (Doc. #1, p. 7.) Etcetera filed a counterclaim for breach of contract alleging that Evanston was obligated to pay the full loss amount, even if the full loss was not directly caused by Hurricane Irma, but failed to do so. (Doc. #9 at 8-11.) Evanston moves for summary judgment on Etcetera's breach of contract counterclaim, asserting that the covered loss amount was less than the policy's deductible amount, and therefore it owes Etcetera nothing under the insurance policy.

For the reasons set forth below, Evanston's motion for summary judgment is granted.

## I.

The material background facts are not in dispute. Effective July 25, 2017, Evanston issued a "named perils"[1] surplus lines[2] insurance policy (the "Policy") on a certain vacant building and

---

[1] "An 'all risks' policy protects against all direct losses except those explicitly excluded from the policy; conversely, a 'named perils' policy only protects against perils explicitly named as included in the policy." Citizens Prop. Ins. Corp. v. Munoz, 158 So. 3d 671, 673 (Fla. 2d DCA 2014)(citation omitted).

[2] "Surplus lines insurance is an alternative product that can be purchased from insurers not authorized to do business in Florida when the coverage sought is not available from authorized insurers." Essex Ins. Co. v. Integrated Drainage Sols., Inc., 124 So. 3d 947, 950 (Fla. 2d DCA 2013)(citation omitted.)

land in Charlotte County, Florida[3] (the "Property"). (Doc. #1-1). The Policy (#2AA121873) provided commercial property coverage and commercial general liability coverage. (Id.)

On September 10-11, 2017, Hurricane Irma struck the area causing damage to the Property. Etcetera submitted a timely claim to Evanston for damage to the Property caused by Hurricane Irma.

Charlotte County inspected the Property on October 25, 2017, and found the building was in danger of collapse. (Doc. #1-2, pp. 4-10.) On November 9, 2017, Charlotte County issued a "Notice of Unsafe Building" stating the building posed an immediate hazard to life or public safety. (Doc. #1-2). Charlotte County informed Etcetera they could either repair or demolish the building. (Id.). The Notice further informed Etcetera that if no action was commenced or completed within 30 days, the County would demolish the building. (Id.). One of Etcetera's retained professional engineers opined that the Property needed to be demolished. (Doc. #54-1, ¶ 7). Etcetera decided to demolish the building.

By letter dated November 28, 2017, Evanston advised Etcetera that Evanston's own engineer determined that (a) the building could be repaired, (b) there was no reason to demolish the building, and

---

[3] Etcetera says the property is located in Port Charlotte (Doc. #9, ¶ 46), while Evanston says it is located in Punta Gorda. (Docs. #1, ¶10; #52, ¶ 1.) Since it is clear both sides are discussing the same property, its precise location in Charlotte County is not material.

(c) any decision to demolish the building would be a voluntary, uncovered loss under the Policy. (Doc. #1-3.)

By letter dated December 29, 2017, Evanston again informed Etcetera that its investigation showed the building could be repaired, and that an estimate for repair of the damage caused by Hurricane Irma was less than the deductible amount under the Policy. (Doc. #1-4.) Evanston noted that while there was some covered loss due to the hurricane, the amount of that covered loss ($9,334.67) was below the windstorm deductible amount ($24,000). (Doc. #1, ¶17; Doc. #104.) Evanston informed Etcetera they could submit evidence reflecting a different damage total if they disagreed with Evanston's calculation. (<u>Id.</u>)

On January 2, 2018, Etcetera, through counsel, notified Evanston that, although there was some pre-existing damage to the building, Hurricane Irma caused additional damage, which rendered the property a "total loss" under Florida's concurrent causation doctrine. (Doc. #1-5.) Evanston was not convinced.

The building was demolished on February 14, 2018. (Doc. #54, ¶ 6.)

**II.**

Evanston's declaratory judgment action (Doc. #1), filed the same day the building was demolished, in part seeks a declaration that under the Policy "its liability for the loss is limited to any covered damage caused by Hurricane Irma." (Doc. #1, p. 7.)

Etcetera's Counterclaim similarly asserts that the Policy is a "named perils" policy "that covers direct physical losses to the Property caused by Windstorm or Hail." (Doc. #9, ¶49.) Etcetera also claims, however, that Evanston is liable for the "direct physical loss caused by Hurricane Irma and/or ensuing losses" to the Property which are covered by and not excluded from the Policy. (Doc. #9, ¶¶ 50-53) (emphasis added).

Etcetera demanded an appraisal pursuant to the Policy (Doc. #24-1), and filed a motion to compel appraisal. (Doc. #24.) The Court granted Etcetera's motion and ordered an appraisal panel to determine the amount of loss caused by Hurricane Irma and the amount of loss from other causes. (Doc. #31.) The appraisal found that the amount of loss due to Hurricane Irma was $19,868.00, while the amount of loss due to all causes other than Hurricane Irma was $1,580,610.32. (Doc. #52-1.) Thus, Hurricane Irma was the cause of approximately 1.24% of the total loss ($19,868/$1,600,478). The appraisal found the value of the building to be $1,563,151.32. (Id.)

**III.**

Evanston argues summary judgment is warranted because the appraisal determining the amount of the Hurricane Irma windstorm damage is binding, that amount is less than the applicable deductible under the Policy, and Evanston therefore did not owe any money to Etcetera and did not breach the Policy by its failure

to pay. (Id., pp. 6-7.) Etcetera agrees that the loss amount as determined by the appraisal is binding, and that the appraisal's loss amount is less than the Policy's deductible amount. Etcetera argues, however, that under Florida's concurrent causation doctrine Evanston is nonetheless liable for the entirety of the otherwise non-covered loss. (Doc. #54). Because this amount exceeds the deductible amount under the Policy, Etcetera asserts summary judgment must be denied.

**A.**

The Court begins with the language of the Policy. The Policy is a "named perils" policy under which Evanston agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. #1-1, p. 59[4].) There are eleven (11) "Covered Cause[s] of Loss", which include "Windstorm or Hail." (Doc. #1-1, p. 89.) It is undisputed that the Property is a "Covered Property" and that Hurricane Irma was a "Windstorm" within the meanings of the Policy. Thus, under the Policy, Evanston agreed to pay Etcetera for direct physical loss of or damage to the Property caused by or resulting from Hurricane Irma.

---

[4] The page reference is to the Court-generated number on the upper right corner of the document, not the page number on the Policy itself.

The appraisal has conclusively determined the amount of the covered loss to the Property due to Hurricane Irma to be $19,868.00. (Doc. #52-1.) Both sides concede, as they must, that the appraisal determination is binding:

> The division of responsibility between the appraisers and court is therefore clear. The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril .... [and] [t]he court decides whether the policy provides coverage for the peril which inflicted the damage, and for the particular property at issue; in other words, all coverage matters.

People's Tr. Ins. Co. v. Garcia, 263 So. 3d 231, 234 (Fla. 3d DCA 2019) (citation omitted). Because Evanston admitted that there was covered loss (although the amount was disputed), causation is an amount-of-loss question for the appraisal panel. Id. at 235. See also People's Trust Ins. Co. v. Tracey, 251 So. 3d 931, 933 (Fla. 4th DCA 2018). It is also undisputed that none of the other causes of loss to the Property were Covered Cause(s) of Loss under the Policy.

Finally, there is no dispute that the Policy has a deductible provision (Doc. #1-1, pp. 80-82), and that the deductible amount in this case is greater than the appraisal award. Accordingly, it appears that Evanston owed no money to Etcetera under the Policy for the loss to the Property caused by or resulting from Hurricane Irma.

**B.**

Defendants argue, however, that the Court's analysis cannot end here, but must apply the Florida concurrent causation doctrine. (Doc. #54, pp. 4-7.) Under this doctrine, Etcetera argues that a jury could decide Evanston is liable for the 98.76% of the loss to the Property not caused by Hurricane Irma or any other Cause[s] of Covered Loss.

In Sebo v. Am. Home Assurance Co., Inc., 208 So. 3d 694 (Fla. 2016), the Florida Supreme Court adopted the concurrent causation doctrine in the all-risk insurance policy context. Mr. Sebo had purchased a four-year old home in Naples, Florida and obtained an $8 million all-risks policy on it. Id. at 695. Rainstorms soon made it clear that there were major design and construction defects to the house, and shortly thereafter Hurricane Wilma further damaged the house. Id. at 696. The insurer paid $50,000 for mold damage, but denied the remainder of the claim. Id. Because the house could not be repaired, it was eventually demolished. Id.

The Florida Supreme Court stated the issue and its task as follows:

> The issue presented is whether coverage exists under Sebo's all-risk policy when multiple perils combined to create a loss and at least one of the perils is excluded by the terms of the policy. To answer this question, this Court must determine the proper theory of recovery to apply, which is a pure question of law.

Sebo, 208 So. 3d at 696. The Florida Supreme Court noted that "the policy at issue in this case is an all-risk policy" and that "in all-risk policies such as the one held by Sebo, construction is governed by the language of the exclusionary provisions." Id. at 696–97. Therefore, the Court stated "[w]e are confronted with determining the appropriate theory of recovery to apply when two or more perils converge to cause a loss and at least one of the perils is excluded from an insurance policy." Id. at 697.

The Florida Supreme Court concluded "that when independent perils converge and no single cause can be considered the sole or proximate cause, it is appropriate to apply the concurring cause doctrine." Id. Under the concurring cause doctrine, "coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause." Id. at 698.

Evidence at the Sebo trial established that rainstorms, hurricanes, and leakage caused by major design and construction defects combined to damage the residence. Id. at 696. Leakage from design and construction defects was excluded under the all-risk policy. Id. at 700. Having determined "there is no reasonable way to distinguish the proximate cause of [the] property loss," id., the Florida Supreme Court applied the concurrent cause doctrine, stating "[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to

find the loss covered by an all-risk policy even if one of the causes is excluded from coverage." Id. (alteration in original; citation omitted).

Etcetera relies primarily on the Affidavit of Gregorio Batista (Doc. #54-2), a professional engineer licensed in Florida, for its factual support of the application of the concurrent cause doctrine in this case. For this portion of the Opinion and Order, the Court accepts the facts set forth in the Affidavit in the light most favorable to Etcetera, the non-moving party.

When the Property was first insured by Evanston in 2018, it was an old and deteriorated building, but not in danger of falling down. At the time of Hurricane Wilma, the building had suffered from "pre-existing wear and tear, deterioration and decay" and "appeared to have been near the end of its useful life and Hurricane Irma was the proverbial *coup de grace*." (Doc. #54-2, p. 3.) "Simply stated, the old and heavily deteriorated building exhibited considerable signs of decay and deterioration." (Id. at 4.) "These other causes of loss include wear and tear, deterioration, decay, termite related damage, corrosion, sagging, cracking, and other age-related reasons." (Id. at 7.)

Accepting the findings of the appraisal, Mr. Batista noted that the Hurricane Irma damage to the roof was relatively small in comparison to damage from other causes. (Doc. #54-2, p. 4.) Nonetheless, Mr. Batista opined that "the extent of the windstorm

damage to the already deteriorated building was enough so that the building should be torn down because any attempt to repair the structure was not economically feasible." (Id. at 3.) Mr. Batista asserted that the old age, sagging, decay, and deterioration of the roof decking, trusses, and masonry walls, combined with the windstorm damage, necessitated the building be demolished because the roof shingles could not be replaced without addressing all the other non-windstorm damages. (Id. at 4-9.)

Etcetera asserts that these facts bring the case within the Florida concurrent cause doctrine. While accepting Mr. Batista's facts, this case is clearly not within Sebo. The concurrent cause doctrine has only been applied in all-risks policy cases, such as Sebo. See Jones v. Federated Nat'l Ins. Co., 235 So. 3d 936 (Fla. 4th DCA 2018); Citizens Property Ins., Corp. v. Salkey, 260 So. 3d 371 (Fla. 2d DCA 2018). The case the Florida Supreme Court adopted in Sebo, Wallach v. Rosenberg, 527 So. 2d 1386 (Fla. 3d DCA 1988), was also an all-risks policy. The Policy issued by Evanston is not an all-risks policy, but a named perils policy. Plaintiff has not cited any binding authority applying the Florida concurrent cause doctrine to a named-perils policy, and the Court declines to do so.[5]

---

[5] The Court agrees with Evanston that the Policy contains an anti-concurrent cause provision which bars the application of the concurrent cause doctrine to any ordinance or law requiring the building to be torn down. (Doc. #57, p. 2.) However, as Etcetera

Accordingly, it is now

**ORDERED:**

1. Plaintiff Evanston Insurance Company's Motion for Summary Judgment (Doc. #52) is **GRANTED** in favor of plaintiff/counterclaim defendant and against the defendant/counterclaim plaintiff as to Count I of the Counterclaim. The Clerk shall withhold entry of judgment pending resolution of the other portions of the case, but terminate the Counterclaim.

2. The parties shall file an Amended Case Management Report within **SEVEN (7) DAYS** of this Opinion and Order pursuant to the Endorsed Order (Doc. #59).

**DONE and ORDERED** at Fort Myers, Florida, this ___8th___ day of January, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

points out (Doc. #54, p. 7), the Policy does not include anti-concurrent cause language for any of the concurrent causes at issue in this case.